## Frazier, et al. v. Morris.

(Decided November 17, 1914.)

### Appeal from Anderson Circuit Court.

1. Vendor and Purchaser—Bona Fide Purchasers—Constructive Notice and Facts Putting on Inquiry.—Mere inadequacy of consideration is not sufficient to constitute constructive notice of the adverse claims of third parties, thereby withdrawing from the purchaser the protection of the rule, that a bona fide purchaser is not affected by the claims or title of third persons; but one is not a bona fide purchaser where the consideration paid is grossly inadequate, or the inadequacy is so palpable as to raise a conclusive inference that the purchaser abstained from inquiry for the very purpose of avoiding notice.

2. Adverse Possession—Hostile Character of Possession—Possession Becoming Adverse After Amicable. Entry.—Where a possession was in its origin amicable, it requires open acts of renunciation sufficient to raise a presumption of notice thereof upon the part of the legal title holder, in order to constitute such a disseizin as will initiate an adverse possession and set the statute in motion.

J. W. GAINS, LILLARD CARTER and F. R. FELAND for appellant.

L. W. McKEE and J. B. SHELY for appellee.

Opinion of the Court by Judge Hannah—Affirming.

For several years prior to 1871, Matthew Frazier was keeper of the Poor Farm of Anderson County. The county authorities for some reason determined to sell the farm, which consisted of some ninety acres; and it was sold in three tracts. One of these tracts, containing 51 acres, was on March 20, 1871, conveyed by a commissioner appointed for that purpose by the Anderson County Court, to Jordon Frazier. He was a brother of Matthew Frazier, unmarried, and a man of some wealth. As a part of the purchase price of the 51 acres, six hundred and fifty dollars, he turned in a county warrant amounting to four hundred and five dollars allowed to Matthew Frazier on October 26, 1869, for his services as county poor farm keeper, which warrant was assigned by Matthew to his brother, Jordon, on October 27, 1869.

After this conveyance was made to Jordon, Matthew continued to occupy the farm, and lived thereon until his death in 1895. Matthew purchased a twelve-acre tract adjoining the fifty-one acre tract conveyed by the county to Jordon, taking a conveyance to himself, the date of which purchase is not shown by the record, but it was prior to 1887.

On March 10, 1887, twenty-one acres of the fifty-one acre tract above mentioned, were conveyed by the joint deed of Jordon and Matthew to one J. W. Rice, together with a passway over Matthew's twelve-acre tract, in exchange for a like number of acres conveyed by Rice to Jordon Frazier.

Of this twenty-one acres, Jordon Frazier on the 14th day of March, 1896, conveyed ten acres to one A. H. Young; and the remaining eleven acres were sold in an action to settle the estate of Jordon Frazier, and on December 7, 1899, conveyed to A. H. Young.

At the time of his death in 1895, Matthew Frazier occupied the thirty acres remaining out of the original fifty-one acres, and the twelve acres adjoining it. He also owned five acres of land in Anderson County not contiguous to these tracts.

By his will, he devised all his property, both personal and real, to his wife, Nancy A. Frazier, during her lifetime or so long as she should remain his widow; he did not enumerate or in any way describe his real estate in the will.

On February 19, 1897, a very short time before his death, Jordon Frazier executed, acknowledged and lodged for record, a deed conveying to Nancy Frazier, widow of his brother, Matthew, the tract of land which was conveyed to Jordon by the Commissioner for Anderson County, on March 20, 1871, containing fifty-one acres.

On February 11, 1901, in consideration of $295, Nancy Frazier conveyed her determinable life estate in the twelve-acre tract heretofore mentioned, and the fee of the thirty acres, conveyed to her by Jordon Frazier, to Theodore Alcorn.

On January 5, 1903, in consideration of $650, Alcorn conveyed the property mentioned to D. M. Thacker. On November 2, 1903, in consideration of $650, Thacker conveyed it to R. M. Elliott. On November 21, 1904, in consideration of $1,800, Elliott conveyed it to L. P. Lyons, together with a forty-acre tract owned by him adjoining the Frazier tract.

On November 28, 1908, the lands mentioned were in consideration of $1,185 conveyed to Annie Lyons by the Master Commissioner of the Anderson Circuit Court. The deed does not show that L. P. Lyons was a party to the action in which was had the decretal sale pursuant to which this deed was executed; but we assume that he was a party thereto, or that his title was in some manner divested.

On December 1, 1909, in consideration of $1,600, Annie Lyons conveyed the tracts above mentioned to appellant J. B. Morris.

On January 24, 1913, the heirs of Matthew Frazier by his first wife (he had no children by Nancy Frazier) instituted this suit in equity in the Anderson Circuit Court, seeking a recovery of the thirty-acre tract and of the twelve-acre tract, upon the ground that their an-

cestor, Matthew Frazier had ripened a title to the thirty-acre tract as against his brother, Jordon Frazier, the legal title holder, by an actual, adverse possession continuing for the statutory period; and that it and the twelve-acre tract were by Matthew Frazier devised to Nancy Frazier for only so long as she should remain his widow, and that she had since his death re-married and extinguished her determinable life estate.

Without objection to the form of action, the case was practiced as an equitable proceeding; and upon submission and trial, the chancellor adjudged the plaintiffs to be the owners of the twelve-acre tract, Nancy Frazier's life estate therein having determined upon her re-marriage. As to this tract, Morris had abandoned it after learning of the re-marriage of Nancy Frazier, which occurred on July 22, 1911.

The chancellor further adjudged that Morris was the owner of the thirty-acre tract, and dismissed the petition. The plaintiffs appeal.

1. It will be noted at the outset that there is no plea here involved that Jordon Frazier held the title of the thirty acres in trust for his brother, Matthew. The claim of the plaintiffs is that Matthew Frazier by an actual, adverse possession of the thirty acres for the statutory period, ripened a title thereto, and thereby extinguished the legal title held by his brother, Jordon Frazier.

As has heretofore been stated, Matthew Frazier was living upon the Poor-house Farm as the keeper of the Poor-house, when the conveyance was made from Anderson County to Jordon Frazier. And after that conveyance was made, Matthew continued to live thereon; and in the absence of any evidence to the contrary, it will be presumed that he continued in his occupancy of the land as a tenant at will of his brother, Jordon Frazier.

The question presents itself, therefore, as to how Matthew Frazier could convert his tenancy at will into an adversary claim which would in due time ripen into title. It is one of the essential elements of such a claim that it shall be hostile, and in order that it may be hostile, there must be a disseizin of the legal title holder that will be the commencement of a new title. Hostility of possession is not always the result of exclusive possession, although as a general rule, the law presumes

that the exclusive possession of land by one who is a stranger to the legal title holder is adverse, unless there is some family or other relation that may account for it. Mounts v. Mounts, 155 Ky., 363, 159 S. W., 818; Cryer v. McGuire, 148 Ky., 100.

And, where a possession is in its origin amicable, it will not become adverse so as to set the statute to running unless the property is in fact held adversely and in such a manner as to apprise the other party or a person of ordinary prudence, that the holding is adverse. Padgett v. Decker, 145 Ky., 227, 140 S. W., 252, and cases therein cited.

In Morton v. Lawson, 1 B. M. 45, it was held that a tenant's open acts of renunciation and hostility to the landlord's title sufficient to raise a presumption of notice thereof upon the part of the landlord, constitute such a disseizin as to initiate an adverse possession and set the statute in operation. See to same effect, Turner v. Davis, 1 B. M., 151; Farrow v. Edmunson, 4 B. M., 605; 41 Am. Dec., 250; Whipple v. Earick, 93 Ky., 121; South v. Marcum, 58 S. W., 527, 22 R., 641.

There was an attempt upon the part of the plaintiff to establish an adverse holding upon the part of Matthew Frazier by proof of statements made by him during his lifetime, such as his calling the land in controversy his own, and calling it his home; but no witness was produced to whom Matthew Frazier ever undertook to explain how it was that the legal title was held by Jordon Frazier; and no proof was produced of open acts of renunciation and hostility to his brother's title.

On the other hand, there is the fact that twenty-one of the original fifty-one acres of this tract were conveyed by the joint deed of Jordon Frazier and Matthew Frazier to J. W. Rice in exchange for a like number of acres conveyed by Rice to Jordon Frazier; and that Jordon Frazier sold and conveyed ten acres of this himself, and the other eleven acres were sold in the settlement of his estate.

It would require unusually clear and convincing proof of a hostile holding under these circumstances to set in motion the statute as against the legal title-holder; and such proof is not forthcoming in the record here presented.

But it is contended by appellants that Jordon Frazier bought the 51 acres from the county under and pur-

suant to an arrangement and agreement effected between him and Matthew Frazier whereby the latter should be entitled to the land upon repayment to Jordon of the purchase price thereof.

But assuming that such an agreement was made, and that Matthew Frazier remained on the land under that agreement, his holding was not hostile to the legal title-holder unless and until he paid the purchase price or repudiated and renounced the contract under which he entered. Henderson v. Dupree, 82 Ky., 678; Pope v. Brassfield, 110 Ky., 128.

That Matthew Frazier never repaid to Jordon Frazier the purchase price of the land is apparent from the record, for at the time of his death he was indebted to Jordon Frazier in a considerable sum, for amounts borrowed from his brother from time to time.

· Nor is there proof that having entered upon the land in controversy under such an arrangement as has been mentioned, Matthew Frazier ever openly renounced the contract under which he entered in such manner as to raise a presumption of notice upon the part of his brother, and thus initiated· an adverse possession of the premises.

It follows, therefore, that the plaintiffs failed to support the plea of adverse possession ripened into title by their ancestor, Matthew Frazier.

2. Moreover, it was contended by Morris that he was entitled to protection as a bona fide purchaser of the land in controversy. It is conceded that Morris had no actual knowledge· of the claims of' the plaintiff heirs of Matthew Frazier; but appellant argues that the consideration paid by him was so grossly inadequate as to put him on inquiry. If this be true, then Morris was not a bona fide purchaser. Interstate Investment Company v. Bailey, 93 S. W., 578, 29 R., 468; Willis v. Vallette, 4 Met., 186. But in order to constitute constructive notice, the inadequacy of consideration must have been gross. Mere inadequacy of price is insufficient, for it is a matter of common knowledge that persons in financial distress often sell property at a sacrifice. In order to constitute constructive notice, therefore, withdrawing from the purchaser the protection of.the .rule that a bona fide purchaser is not affected by the claims or title of third persons, it is necessary that the inadequacy of the consideration paid shall be so palpable as to raise

a conclusive inference that the purchaser made no inquiries for the very purpose of avoiding notice.

But an examination of the record discloses not a single witness for the plaintiffs testifying as to the value of the lands in controversy. On cross-examination, the defendant testified that of the lands bought by him from Annie Lyons for $1,600, the forty acres not here in controversy lie out on the pike and contain the principal improvements, while the 30 acres here involved lie back of the forty. The twelve-acre tract in which there was only conveyed a determinable life estate was of only nominal value. In fact, Mrs. Lyons only paid $10 for that when she bought it.

Alcorn testified for defendant that $300 was a reasonable price for the property when he bought it.

This is all the competent evidence upon this subject, and it is certainly insufficient to show such inadequacy of consideration as to raise the inference of *mala fides* on the part of Morris in his purchase of the land in controversy.

We are therefore of the opinion that the trial court properly dismissed appellant's petition.

The judgment is affirmed.